UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TEBOGO PHIRI,<br><br>        Plaintiff,<br><br> - against -<br><br>RBC CAPITAL MARKETS, LLC<br><br>        Defendant. | Case No. 1:17-cv-01661-RJS [rel. 17-cv-01318-RJS] |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY THE ROYAL BANK OF CANADA TO INTERVENE**

**TABLE OF CONTENTS**

                                                                   **Page**

PRELIMINARY STATEMENT .................................................................................................... 1
STATEMENT OF FACTS ............................................................................................................ 2
LEGAL ARGUMENT .................................................................................................................... 5
    I.      RBC Is Entitled to Intervene as Of Right ................................................................ 5
    II.     RBC is Entitled To Intervene by Permission.......................................................... 8
    III.    This Court has Jurisdiction Over RBC's Petition in Intervention ....................... 10
CONCLUSION............................................................................................................................. 11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arc/Connecticut v. O'Meara*,
   No. 3:01CV1871 (JBA), 2002 WL 31106383 (D. Conn. Aug. 20, 2002) ............................... 10

*Ass'n of Contracting Plumbers, Inc. v. Local Union No. 2 United Assoc. of
   Journeymen & Apprentices of Plumbing & Pipefitting Indust.*,
   841 F.2d 461 (2d Cir. 1988) ..................................................................................................5

*Bevona v. Field Bridge Assoc.*,
   No. 90 Civ. 5191 (RJW), 1991 WL 274467 (S.D.N.Y. Dec. 6, 1991) ..................................... 6

*Bridgeport Guardians, Inc. v. Delmonte*,
   602 F.3d 469 (2d Cir. 2010) .............................................................................................. 5, 6

*Cohen v. Republic of the Philippines*,
   146 F.R.D. 90 (S.D.N.Y. 1993) ............................................................................................ 7

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
   149 F.R.D. 55 (S.D.N.Y. 1993) ............................................................................................ 6

*Nu-Chem Labs., Inc. v. Dynamic Labs., Inc.*,
   No. 96-CV-5886 (JS), 1998 WL 35180780 (E.D.N.Y. May 19, 1998) ........................ 6, 8, 10

*Orion Shipping & Trading Co. v. E. States Petroleum Corp. of Panama, S. A.*,
   312 F.2d 299 (2d Cir. 1963) ..................................................................................................4

*In re Pandora Media, Inc.*,
   Nos. 12 Civ. 8035 (DLC), 41 Civ. 1395 (DLC), 2013 WL 6569872 (S.D.N.Y.
   Dec. 13, 2013) .......................................................................................................................8

*Sarhank Grp. v. Oracle Corp.*,
   404 F.3d 657 (2d Cir. 2005) ................................................................................................ 11

*Scandinavian Reinsurance Co., Ltd. v. Saint Paul Fire & Marine Ins. Co.*,
   668 F.3d 60 (2d Cir. 2012) ................................................................................................. 11

*Techcapital Corp. v. Amoco, Corp.*,
   No. 99 CIV 5093(AGS), 2001 WL 267010 (S.D.N.Y. Mar. 19, 2001) .................................. 9

*Trbovich v. United Mine Workers of Am.*,
   404 U.S. 528 (1972) ............................................................................................................. 8

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*,
  No. 09 Civ. 9476, 2013 WL 837565 (S.D.N.Y. Mar. 6, 2013), *vacated and remanded on other grounds,* 789 F.3d 29 (2d Cir. 2015) ........................................................... 9

**Statutes**

9 U.S.C. § 203 ............................................................................................................................ 11

28 U.S.C. § 1367 ........................................................................................................................ 11

**Other Authorities**

Fed. R. Civ. P. 24(a) ............................................................................................................ 1, 5, 8

Fed. R. Civ. P. 24(b) ............................................................................................................ 1, 8, 9

Fed. R. Civ. P. 24(b)(1)(B) ..................................................................................................... 8, 10

U.S. Const. art. III ....................................................................................................................... 11

**PRELIMINARY STATEMENT**

The Royal Bank of Canada ("RBC") moves to intervene in this proceeding in order to vacate, and to oppose Phiri's Petition to Confirm, the Arbitral Order which is the subject of this action. RBC seeks to be heard because it is the owner of intellectual property which Petitioner Tebogo Phiri asserts is the subject of the Arbitral Order. Even though RBC never agreed to arbitrate and did not participate in the arbitration that issued the Arbitral Order, Phiri contends that that Order directs Respondent RBC Capital Markets, LLC ("RBCCM"), RBC's non-exclusive licensee, to transfer to him a copy of intellectual property that documentary evidence shows that RBC in fact owns. Unless RBC is permitted to intervene and assert its rights, disposing of this action may as a practical matter permanently impair or impede its ability to protect its interests and deprive it of its property without due process of law. Unlike RBC, RBCCM was a party to the arbitration and thus has different claims and defenses regarding the Arbitral Order. It cannot, however, fully protect RBC's interests as the owner of the property and as a non-participant in the arbitration. Accordingly, RBC is entitled to intervene as of right to protect its property rights. Further, RBC's claims regarding the disposition of intellectual property that it owns and that Phiri contends is addressed by the Arbitral Order at issue in this dispute share common questions of law and fact with this action; namely, a determination of what intellectual property is subject to the Arbitral Order, who owns that intellectual property, and whether the arbitrators exceeded their authority to the extent that the Arbitral Order is construed to direct RBCCM to transfer to Phiri intellectual property which RBC, a non-party to the arbitration, owns.

Accordingly, RBC is entitled to intervene as of right under Fed. R. Civ. P. 24(a) or should be permitted to intervene under Fed. R. Civ. P. 24(b). Intervention will not delay this

proceeding and will, to the contrary, allow the Court efficiently to address the issues raised by the Arbitral Order in a single proceeding.

## STATEMENT OF FACTS

Phiri, as a former employee or "associated person" of RBCCM, commenced an arbitration before the Financial Industry Regulatory Authority ("FINRA") entitled *Tebogo Phiri v. RBC Capital Markets, LLC,* No. 16-03614 against RBCCM asserting that he had been promised the right to receive unspecified intellectual property under certain circumstances pursuant to series of emails and draft transfer letters that were never finalized or signed. *See* Exhibit 1 to Declaration of Patrick W. Shea, dated April 11, 2017 ("Shea Decl."). RBCCM denied that a binding contract was ever created and argued that the statements on which Phiri claimed to have relied had not been made by the party to the arbitration, RBCCM. Throughout the proceeding RBCCM asserted that Phiri had not brought his claim against the proper party. Phiri never sought discovery regarding the proper party and did not seek to add any party to the arbitration. Shea Decl. ¶ 3. Neither RBCCM nor RBC waived RBC's rights to have its rights and obligations with respect to its intellectual property determined in court. RBC was not a party to the arbitration and did not agree to arbitrate any claims with Phiri.

On February 15, 2017, after an expedited hearing, the Panel, using a "check the box" form Order on Request for Preliminary Injunction, circled the word "Granted" and added the word "immediately," but gave no other indication of the scope of its order or the basis for its decision. Shea Decl. Ex. 2. The Panel added that "[i]n addition, the Panel determines that it has jurisdiction over the Respondent, RBCCM, and that RBCCM is the appropriate respondent."

*Id.*[1]  The Arbitral Order made no finding of who owned any intellectual property and the parties' submission agreement did not authorize it to adjudicate the rights of RBC, which owns the property. *Id*.

Although the Arbitral Order is not specific in its terms, Phiri contends that the Arbitral Order requires RBCCM to turn over a copy of intellectual property relating to statistical arbitrage.  While RBCCM possesses a copy of intellectual property relating to statistical arbitrage,[2] it does not own that property.  As the documentary evidence shows, RBC owns all of the intellectual property ("IP") used or developed by RBCCM and has the exclusive right to control its use.  Shea Decl. Ex. 4, ¶¶ 5-6 and Exhibit A thereto, Section 4.1.  While RBC has licensed RBCCM to use IP, that right is expressly non-transferable and RBCCM has no right to transfer or to grant rights to use IP.  Shea Decl. Ex. 4, ¶ 7 and Exhibit A thereto, Section 4.3.

The license agreement under which RBCCM obtained the right to use certain intellectual property is between RBCCM and RBC, not with Phiri.[3]  It does not provide that disputes arising under the agreement shall be arbitrated before FINRA.

---

[1] While the meaning of this statement is unclear, to the extent that it is intended or construed to suggest that the Panel adjudicated the rights of RBC, which was not a party to the Arbitration, it exceeded the powers of the arbitrators.

[2] The Arbitral Order does not specify what intellectual property may be subject to its terms or under what conditions.  In fact, as will be discussed in connection with the briefing on the motion to confirm/vacate, the different drafts exchanged with Phiri discussed different intellectual property and included different limitations on the manner in which Phiri would obtain or could be permitted to use any such property.

[3] Counsel for Phiri has noted that the Services Agreement under which RBC made intellectual property available to RBCCM contains an indemnification provision.  That provision has no relevance to his proceeding.  It does not require RBC to make intellectual property available to Phiri or bind RBC to the outcome of the arbitration with Phiri.  Rather, the indemnification provision simply provides that the parties to the Services Agreement—RBC and RBCCM—will indemnify each other against any claim by any third party *arising out of any breach of [the*

Thus, to the extent that the Arbitral Order is construed to direct the turnover of the property of RBC, who did not agree to and did not arbitrate its rights, it directly affects and purports to dispose of property belonging to RBC even though RBC was not a party to and was not heard in the arbitration. Arbitrators exceed their authority when they determine the rights and obligations of one who is not a party to the arbitration proceeding. *See Orion Shipping & Trading Co. v. E. States Petroleum Corp. of Panama, S. A.*, 312 F.2d 299, 300 (2d Cir. 1963) (an "arbitrator exceed[s] his powers in determining the obligations of a corporation which was clearly not a party to the arbitration proceeding.") RBC was not required to, and did not, appear and assert its rights in an arbitration to which it never agreed to participate. Nor was RBCCM required or authorized to "stand in" for RBC in the arbitration to argue RBC's rights in the intellectual property. RBCCM did assert that it was not the proper party.

Unless RBC intervenes in this proceeding, therefore, to obtain an adjudication of its rights in its intellectual property and to challenge the Arbitral Order purporting to affect those rights as being beyond the scope of the arbitrators' powers, among other things, this proceeding will as a practical matter impair or impede, and in fact will likely destroy, RBC's ability to protect its interests.

Accordingly RBC seeks to intervene to obtain a declaration that it is the exclusive owner of the intellectual property purportedly affected by the Arbitral Order and to vacate (and oppose confirmation of) that Order to the extent that it purports to require RBCCM to transfer to Phiri a

---

*Services Agreement]*. Shea Decl. Ex. 4, Exhibit A thereto, ¶ 8.1. There is also an indemnity against claims that any software belonging to, used by, or supplied by any Party infringes any patent, copyright or other proprietary right. Phiri's claims are not for breach of the Services Agreement or infringement.

copy of intellectual property belonging to RBC.  Under the briefing schedule established by the Court in the April 6, 2017 hearing and conference in this matter, if intervention is granted RBC will follow the same briefing schedule that has been established for RBCCM in filing its opposition to Phiri's application to confirm and in support of a cross-motion to vacate the Arbitral Order.

## LEGAL ARGUMENT

**I.    RBC Is Entitled to Intervene as Of Right**

"Under Fed. R. Civ. P. 24(a)(2), on timely motion, the court must permit anyone to intervene who… claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010) (citations and quotation marks omitted).  Thus, intervention as of right was found to be appropriate where an arbitral award and implementing injunctions could, after confirmation, have been enforced against non-party intervenors, who had not been parties to the arbitration.  *Ass'n of Contracting Plumbers, Inc. v. Local Union No. 2 United Assoc. of Journeymen & Apprentices of Plumbing & Pipefitting Indust.*, 841 F.2d 461, 466-67 (2d Cir. 1988) (affirming intervention as of right under Fed. R. Civ. P. 24(a) and finding that the non-party intervenors were entitled to move to set aside an arbitration award affecting them since)

> [a]lthough the intervenors were not parties to the arbitration and are not technically bound by the awards or injunctions, the arbitration decisions and injunctions directly affect their rights as they prevent the [United Association ("UA")] from exercising its constitutional authority to establish work jurisdiction among its local unions.  Also…the injunction might be enforced against the UA should it attempt to compel Locals 1 and 2 to stop doing the combination work by threatening to revoke their charters.  Certainly, the intervenors have demonstrated a sufficient 'stake in the outcome to have standing under Article III.

A similar result was reached in *Bevona v. Field Bridge Assoc.*, No. 90 Civ. 5191 (RJW), 1991 WL 274467, at *5 (S.D.N.Y. Dec. 6, 1991), which permitted the NLRB to intervene as of right in action to confirm or vacate an arbitration award six months after action began, since a determination regarding whether particular guards were included in a bargaining unit, which had been made in the arbitral award, would impair or impede the NLRB's ability to make this determination as required under the NLRA. Even if the arbitrator's decision was not entitled to res judicata or collateral estoppel effect that would have bound the NLRB, the court held, a district court judgment creates "the kind of 'practical disadvantage' that has been thought sufficient to warrant intervention of right." (citations omitted).

Here, where RBC has submitted documentary evidence that it is the owner of the intellectual property Phiri contends is subject to the Arbitral Order, RBC has an interest in the property or transaction that is the subject of the action. That interest is "direct, substantial, and legally protectable," warranting intervention as of right. *Bridgeport Guardians*, 602 F.3d at 473; *accord Diduck v. Kaszycki & Sons Contractors, Inc.*, 149 F.R.D. 55, 58 (S.D.N.Y. 1993) ("[T]o satisfy Rule 24(a)(2), the interest 'must be significant, must be direct rather tha[n] contingent, and must be based on a right which belongs to the proposed intervenor rather than an existing party to the suit'") (citation omitted) (granting intervention as of right to applicants alleging an interest in a union fund which would be disrupted by the court's distribution of monies from that fund to others). It is hard to conceive of an interest more direct than being the owner of the property that is the subject of the suit. *See Nu-Chem Labs., Inc. v. Dynamic Labs., Inc.*, No. 96-CV-5886 (JS), 1998 WL 35180780, at *3 (E.D.N.Y. May 19, 1998) (permitting party that had allegedly originally owned formulas, customer lists and raw materials at issue in trade secrets

dispute to intervene as of right because intervening party had a substantial interest in and a legal claim to the disposition of such property that would be impaired if intervention were not allowed with respect to determination of the ownership of the property at question); *Cohen v. Republic of the Philippines*, 146 F.R.D. 90, 92 (S.D.N.Y. 1993) (permitting owner of paintings at issue in dispute between putative creditors to intervene since she had an interest in the paintings in question which may be impaired by the action).

RBC and its interest in the property at the heart of the dispute is so situated that an order construing and confirming the Arbitral Order to direct the turnover of RBC's property, may, or indeed here, will, as a practical matter impair or impede the movant's ability to protect its interest, whether that order mentions RBC by name or is simply construed to direct RBCCM to transfer a copy of RBC's property. If the Arbitral Order is ultimately construed in a fashion that would purport to require RBCCM to transfer RBC's property to Phiri and the Court confirms the Order, RBC will lose control over its property without the benefit of due process of law. An order directing RBCCM to turn over a copy of RBC's intellectual property affects RBC just as surely as an order directing RBC to turn over a copy of the property: in either instance, RBC will have been deprived of the right to exclusive control over the property.

Finally, RBCCM cannot adequately represent RBC's interests. RBCCM is expressly the subject of an Arbitral Order, participated in the arbitration, and has different defenses to the Arbitral Order than RBC. If the Arbitral Order is confirmed, RBCCM risks suffering a contempt citation or sanctions from FINRA if it does not comply by turning over RBC's property which it does not own. By contrast, RBC did not participate in the arbitration and is not bound by the arbitration order (although its property is, according to Phiri). If RBCCM is the only party permitted to challenge the Panel's authority to dispose of RBC's property, Phiri will undoubtedly

argue that RBCCM should be barred from advancing that challenge in light of its participation in the FINRA arbitration. No similar argument can be made with respect to RBC which was not bound to arbitrate and did not participate in the arbitration. Thus, only RBC can fully protect its property interests by intervention.

The inadequacy requirement of Rule 24(a) "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538 n.10 (1972); *see also In re Pandora Media, Inc.,* Nos. 12 Civ. 8035 (DLC), 41 Civ. 1395 (DLC), 2013 WL 6569872, at *9-10 (S.D.N.Y. Dec. 13, 2013) (permitting intervention as of right under Fed. R. Civ. P. 24(a) by music publishers in ASCAP rate proceedings where even though publishers and ASCAP generally shared the same ultimate objective, uncertainty, even if minor, of whether the interests would be fully aligned throughout the entire case enabled the party seeking intervention to sustain its "minimal" burden to demonstrate inadequate representation); *Nu-Chem Labs.,* 1998 WL 35180780, at *3 (finding that intervention as of right was proper where while interests of original party to case and proposed intervenor may not be adverse, they were not fully aligned).[4]

## II.   RBC is Entitled To Intervene by Permission

Rule 24(b) gives the court discretion, on a timely motion to "permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). If the Court determines that RBC does not meet the Rule 24(a) standards, the Court should allow RBC to intervene permissively under Rule 24(b). A

---

[4] The fact that RBCCM and RBC share U.S. counsel means only that their interests are not currently adverse: it does not mean that the parties' interests are identical.

court has broad discretion in considering a motion for permissive intervention. *Techcapital Corp. v. Amoco, Corp.*, No. 99 CIV 5093(AGS), 2001 WL 267010, at *3 (S.D.N.Y. Mar. 19, 2001) (citations omitted) (granting intervention). "Within this discretion, courts have held that Rule 24(b)(2) is to be liberally construed in favor of intervention." *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, No. 09 Civ. 9476, 2013 WL 837565, at *7 (S.D.N.Y. Mar. 6, 2013), *vacated and remanded on other grounds,* 789 F.3d 29 (2d Cir. 2015) (permitting intervention by permission to entity having sublicensing agreements with third parties relating to intellectual property rights at issue in the underlying suit).

In *Techcapital,* the court granted a motion to intervene by permission where the arbitral award which was the subject of the underlying action purported to adjudicate certain rights between the proposed intervenors, who had not been parties to the arbitration, since "[t]he Intervenors' claims have issues of law in common with the main action because the issues are the same: review of the Award pursuant to the Federal Arbitration Act . . . . This is enough for Rule 24(b), which is satisfied if there is a single common question of law or fact." 2001 WL 267010, at *3. The court rejected the argument that intervention was untimely since the proposed intervenors had not attempted to intervene in the arbitration. The court found the request to intervene in the confirmation proceeding itself had been made promptly.

Here, too, the issues are the same: review of the Arbitral Order pursuant to the Federal Arbitration Act and consideration of how that Arbitral Order affects the rights of a non-party. Further, and critically, intellectual property that RBC owns is asserted to be the subject matter of the Arbitral Order. To determine whether the Arbitral Order should be vacated on the basis that it affects property rights of a non-party to the arbitration, the Court will need to consider RBC's rights in that property. Thus the factual and legal issues RBC will advance are directly related to

factual and legal issues before the Court. *Cf. Nu-Chem Labs.*, 1998 WL 35180780, at *4 (finding that permissive intervention was appropriate where "common questions of fact abound, including the determination of rightful ownership of the customer lists, formulas, inventories, etc.").

Further, RBC's participation in the confirmation/vacatur hearing "will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented" *Arc/Connecticut v. O'Meara*, No. 3:01CV1871 (JBA), 2002 WL 31106383 (D. Conn. Aug. 20, 2002). Moreover, the fact that the proposed intervenor and the original respondent are represented by the same attorneys will make the proceeding efficient and there is no potential delay or prejudice in the adjudication of the rights of the original parties. *Id.* at *5. Indeed, if intervention were denied, RBC would be required to renew its motion to amend its pending lawsuit to cure a jurisdictional defect, or if that proceeding were dismissed without prejudice for want of jurisdiction, to file a new lawsuit against Phiri to protect its property rights. Permitting intervention allows all issues to be considered in one proceeding, not two.

RBC's request to intervene is timely and all parties were on notice of RBC's rights before Phiri moved to confirm the Arbitral Order. RBC's participation will be on the same schedule set for the parties to the arbitration. Accordingly, intervention should be permitted under Rule 24 (b)(1)(B).

### III.  This Court has Jurisdiction Over RBC's Petition in Intervention

This Court has jurisdiction to hear RBC's challenge to the Arbitral Order. Because Phiri is a citizen of Botswana, the Arbitral Order is subject to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards of 1958 (the "New York Convention"), implemented by 9 U.S.C. § 201 *et seq.*, as Phiri concedes. The court has original

jurisdiction over proceedings to confirm or vacate awards falling under the Convention. 9 U.S.C. § 203; *see Scandinavian Reinsurance Co., Ltd. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012); *Sarhank Grp. v. Oracle Corp.*, 404 F.3d 657, 660 (2d Cir. 2005) (rejecting assertion that court lacked subject matter jurisdiction over a claim relating to enforcement of arbitral award against non-party to the arbitration agreement).  Further, this Court has supplemental jurisdiction under 28 U.S.C. § 1367 over RBC's request for a declaratory judgment that it is the owner of the intellectual property at issue because the request is directly related to claims in the action concerning the enforcement of the Arbitral Order and forms part of the same case or controversy under Article III of the United States Constitution.

## CONCLUSION

RBC should be permitted to intervene in this proceeding so that it may be heard and protect its rights with respect to an Arbitral Order issued in an arbitration to which it did not consent which Phiri contends has the effect of requiring RBCCM to turn over to him a copy of intellectual property that RBC owns.

Dated: New York, New York
April 11, 2017

PAUL HASTINGS LLP

/s/ Patrick W. Shea
By:   Patrick W. Shea
200 Park Avenue
New York, New York 10166
(212) 318-6000
patrickshea@paulhastings.com

Counsel for Proposed Intervenor
the Royal Bank of Canada